

**Signed: November 23, 2005**

_____

**LESLIE TCHAIKOVSKY
U.S. Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re                                    No. 04-43327
                                         Chapter 13
CATHY COLEMAN,

    Debtor
_____/

CATHY COLEMAN,                           A.P. No. 05-4297

    Plaintiff,

  vs.

EDUCATIONAL CREDIT
MANAGEMENT CORPORATION,

    Defendant.
_____/

**MEMORANDUM OF DECISION RE EDUCATIONAL CREDIT
MANAGEMENT CORPORATION'S MOTION TO DISMISS**

Before the Court is defendant Educational Credit Management Corporation's ("ECMC") motion to dismiss the complaint in the above-captioned adversary proceeding. The motion was opposed by

the debtor, Cathy Coleman ("Coleman"). Having considered the applicable law and argument of the parties, both oral and written, for the reasons stated below, the motion is denied.

## SUMMARY OF FACTS AND CONTENTIONS

On June 16, 2004, Coleman filed a voluntary petition seeking relief under Chapter 13 of the Bankruptcy Code.[1] The Court confirmed Coleman's first amended plan on August 26, 2004, providing for payments over a five year period. ECMC filed a timely proof of claim in the amount of $102,393.46, including unpaid interest and collection costs, for the balance due on Coleman's student loans (the "Student Loan Debt"). On June 23, 2005, Coleman filed this adversary proceeding, seeking a partial discharge of the Student Loan Debt on the ground that excepting the entire Student Loan Debt from her Chapter 13 discharge would constitute an undue hardship.[2] As of August 3, 2005, the principal and interest balance on the promissory notes was $106,139.11. Prior to filing her petition, Coleman had made repayments totaling $1,000.00.

---

[1] The Bankruptcy Code is contained in Title 11 of the United States Code. Hereinafter, all statutory references are to Title 11 unless otherwise specified.

[2] The Ninth Circuit has held that a bankruptcy court has the authority to grant a partial discharge of a student loan debt. In re Saxman, 325 F.3d 1168, 1173-74 (9th Cir. 2003).

2

To support her claim of undue hardship, Coleman relied primarily on her history of irregular employment and current unemployed status. Specifically, Coleman alleged that she holds a bachelor's degree in art and attended graduate school, seeking a master's degree in cultural anthropology, but did not complete the degree program. Coleman holds a single subject teaching credential and has worked intermittently as a teacher since 1999, having been laid off four times. Her income has ranged from $1,800 to $4,000 per month as a teacher, but she was laid off in June 2005 and currently receives $410 per month on unemployment. Coleman has sought employment in related fields to no avail.

On August 19, 2005, ECMC filed the instant motion to dismiss the complaint on two grounds. First, ECMC argued that the Court lacks subject matter jurisdiction because the issue of the dischargeability of Coleman's Student Loan Debt is not ripe for adjudication until Coleman has completed her Chapter 13 plan payments and obtained a discharge. Second, ECMC argued that, even if the Court has subject matter jurisdiction, as a discretionary matter, the Court should wait to rule on the hardship issue until Coleman receives a discharge because a determination at an earlier time is too speculative. Coleman opposed ECMC's motion.

3

## DISCUSSION

**I. WHETHER COURT LACKS SUBJECT MATTER JURISDICTION TO DETERMINE UNDUE HARDSHIP PRIOR TO COMPLETION OF PLAN PAYMENTS**

Section 1328 provides that a Chapter 13 debtor is entitled to a discharge of his or her debts "as soon as practicable after completion...of all payments under the plan...." However, certain categories of debts are excepted from the discharge. 11 U.S.C. § 1328(a). Among the excepted debts are those debts excepted from an individual chapter 7 debtor's discharge under § 523(a)(8). 11 U.S.C. § 1328(a)(2). Section 523(a)(8) provides that student loan debts are nondischargeable unless repayment of the debt would impose an undue hardship on the debtor and the debtor's dependents. 11 U.S.C. § 523(a)(8). ECMC contends that the bankruptcy court lacks subject matter jurisdiction to determine whether excepting the Student Loan Debt from a Chapter 13 debtor's discharge would impose an undue hardship because the issue is not "ripe" until the debtor has earned her right to a discharge by completing the plan payments.

Ripeness is a concept rooted in the "case and controversy" clause of the Constitution and is a prerequisite to the Court's subject matter jurisdiction. See U.S. Const. art. III, § 2, cl. 1. The basic rationale of the ripeness doctrine "is to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from

4

judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148–49 (1967). In analyzing ripeness, a federal court must "evaluate both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Id. at 149; see also American-Arab Anti-Discrimination Committee v. Thornburgh, 970 F.2d 501, 510 (9th Cir. 1992).

In In re Taylor, 223 B.R. 747 (Bankr. 9th Cir. 1998), the Bankruptcy Appellate Panel (the "BAP") held that a court may determine whether a student loan debt should be discharged as an undue hardship prior to the completion of a Chapter 13 debtor's plan payments. In Taylor, the debtors filed their complaint less than six months after filing their Chapter 13 petition and almost three months before the Chapter 13 plan was confirmed. In concluding that the issue could be determined before the debtor's discharge was imminent, the Taylor court relied on Federal Rule of Bankruptcy Procedure (hereinafter "FRBP") 4007(b) which provides that "a § 523(a)(8)[] action can be brought *at any time*." Taylor, 223 B.R. at 751 (emphasis added); see FRBP 4007(b).

The Taylor court observed that the "filing of a complaint at any time to discharge a student loan based on undue hardship does not conflict with any statutory right or procedure or with

5

public policy." See Taylor, 223 B.R. at 751. Consequently, it concluded that the debtors "had a right to file the Complaint when they did, and the issues were *ripe* for adjudication at that time." Taylor, 223 B.R. at 752 (emphasis added). However, it does not appear from the text of the decision that the term "ripe" was used in its constitutional sense.

ECMC contends that Taylor is contrary to two Ninth Circuit Court of Appeals decisions and thus should not be followed by this Court: i.e., In re Heincy, 858 F.2d 548 (9th Cir. 1988) and In re Beaty, 306 F.3d 914 (9th Cir. 2002). In Heincy, prior to confirmation of the Chapter 13 plan, the debtor sought a determination regarding the dischargeability of a criminal restitution debt, and the bankruptcy court held the debt to be dischargeable. Heincy, 858 F.2d at 549. The Ninth Circuit reversed, concluding that the dischargeability issue was "not ripe for resolution until the court knows whether the Heincys have successfully completed payments under the plan." Id. at 550. At the time of the Ninth Circuit's decision in Heincy, criminal restitution debts were not dischargeable under § 1328(b), but were arguably dischargeable under § 1328(a). See 11 U.S.C. § 1328 (1989); Pub. L. No. 101-581 (1990) (amending § 1328(a) to except criminal restitution debts from discharge).

The Heincy court applied the following reasoning:

> If the Heincys ultimately complete payments under the plan, their discharge would be controlled by 11 U.S.C. § 1328(a). If they do not, their discharge

6

>would be controlled by 11 U.S.C. § 1328(b). Under the latter section, the restitution order would not be dischargeable. Under the former section, there is considerable doubt whether the restitution order would be dischargeable in light of the Supreme Court's recent decision in Kelly v. Robinson [] (expressing "serious doubts" as to whether restitution orders are ever dischargeable.) We need not now decide that issue. Because the plan is still in progress, the bankruptcy court could not have known which discharge provision would apply.

Id. (citations omitted).

The Taylor court found Heincy distinguishable because the rationale recited above did not apply to the issue of the dischargeability of student loan debt. See Taylor, 223 B.R. at 751. Unlike a criminal restitution obligation at the time of Heincy, whether a student loan debt is excepted from discharge under either § 1328(a) and § 1328(b) is governed by the same standard: i.e., "undue hardship." See 11 U.S.C. §§ 523(a), 1328(a)(2).

ECMC argued that it is irrelevant that student loan debts are excepted from discharge under both § 1328(a) and § 1328(b) because the Heincy court concluded that a criminal restitution obligation could probably not be discharged under either provision. See Heincy, 858 F.2d at 550. However, the Heincy court expressly refused to resolve the question of whether criminal restitution debt was in fact excepted from the discharge under either provisions. To the contrary, it relied on the ostensibly disparate treatment of criminal restitution debt under § 1328(a) and § 1328(b). See id. As a result, the

Taylor court correctly distinguished the Heincy decision from the issue before it.

In Beaty, the issue was whether laches could be raised as a defense to a complaint to determine that a debt should be excepted from the debtor's discharge under § 523(a)(3)(B). Section 523(a)(3)(B) excepts an unscheduled debt from the debtor's discharge if the creditor has a claim that would have been entitled to be excepted from the debtor's discharge under § 523(a)(2), (4), or (6) if the creditor had received notice of the bankruptcy in time to file a timely action to have the debt excepted from the debtor's discharge, as required by § 523(c). 11 U.S.C. §§ 523(a)(3)(B), 523(c). Rule 4007(b) provides that a complaint seeking a determination that an unscheduled debt of this sort is nondischargeable may be filed "at any time." Beaty, 306 F.3d at 917. Notwithstanding this language, the Beaty court held that laches could be asserted as a defense to such an action. It observed that "the bankruptcy court is a court of equity and should invoke equitable principles and doctrines, refusing to do so only where their application would be 'inconsistent' with the Bankruptcy Code." Id. at 922-23.[3]

---

[3] The Ninth Circuit rejected the applicability of the Supreme Court's interpretation of the phrase "at any time" in Heflin v. United States, 358 U.S. 415, 420 (1959). In Heflin, the Supreme Court held that a statute providing that a motion to vacate a sentence "may be made at any time" rendered the doctrine of laches inapplicable. The Ninth Circuit distinguished Heflin on the ground that, there, the language was contained in a statute

8

Beaty is clearly distinguishable. ECMC does not contend that Coleman's claim is barred by laches. To the contrary, it contends that the action is premature. Moreover, the question is not whether a procedural rule could create subject matter jurisdiction where it does not exist. Clearly, it cannot. Thus, the question remains whether the issue is ripe as a constitutional matter.

ECMC contends that the issue of undue hardship is not ripe as a constitutional matter because it would require the bankruptcy court to speculate as to Coleman's financial situation at a future time: i.e., when she completes her plan payments. Unless she modifies her plan to shorten its term, Coleman will not complete her plan payments until 2009. The Court finds this argument without merit.

In the Ninth Circuit, as in most circuits, the test for undue hardship under § 523(a)(8) is governed by In re Brunner, 831 F.2d 395 (2d Cir. 1987). See In re Pena, 155 F.3d 1108, 1112 (9th Cir. 1998)(adopting Brunner test). To establish that excepting a student loan debt from the discharge would impose an undue hardship, a debtor must prove three things: "(1) that she cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if

---

rather than a procedural rule. It noted that Rule 4007 "cannot create an exception to the Bankruptcy Code, and cannot abridge, enlarge, or modify any substantive right." Beaty, 306 F.3d at 924 (internal quotations omitted).

9

forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." Saxman, 325 F.3d at 1172.

Unless the repayment period is close to completion at the time a Chapter 13 discharge is due, the second prong of the Brunner test always requires the Court to speculate as to the debtor's future financial prospects. Granted, the Court may be required to speculate to a greater degree if it makes the determination a few years prior to the debtor's discharge. However, the Court does not view this difference of degree as of constitutional significance.

The majority of circuit courts that have addressed this issue have disagreed with Taylor. See In re Bender, 368 F.3d 846 (8th Cir. 2004); In re Rubarts, 896 F.2d 107 (5th Cir. 1990); In re Hochman, 853 F.2d 1547 (11th Cir. 1988).[4] These courts concluded that the express language of § 1328(a) requires the determination to be made at the time of discharge. One lower court observed that, while FRBP 4007(b) permits the dischargeability action to be *filed* at any time, it does not provide that the issue of dischargeability may be *determined* at

---

[4]See also In re Pair, 269 B.R. 719 (Bankr. N.D. Ala. 2001); In re Soler, 250 B.R. 694 (Bankr. D. Minn. 2000); In re Raisor, 180 B.R. 163 (Bankr. E.D. Tex. 1995).

10

any time. See, e.g., Raisor, 180 B.R. at 165—67. One circuit court has agreed with Taylor. See In re Ekenasi, 325 F.3d 541 (4th Cir. 2003).[5]

However, with the exception of Craine and Bender, none of these courts addressed the issue from a constitutional standpoint. The Craine court discussed the Article III "case or controversy" requirement and held that an actual controversy existe See Craine, 206 B.R. at 600—01. The Bender court decided the issue on prudential grounds. Bender, 368 F.3d at 847-48. The Court agrees with Craine that the issue of the dischargeability of a student loan presents a "case and controversy" from a constitutional standpoint as soon as the Chapter 13 case is filed. Thus, the Court concludes that it has subject matter jurisdiction to determine whether a student loan debt should be discharged as an undue hardship prior to the completion of a chapter 13 debtor's plan payments. ECMC's motion to dismiss on the grounds of lack of subject matter jurisdiction will be denied.

**II. SHOULD COURT EXERCISE ITS DISCRETION TO DELAY DETERMINATION OF UNDUE HARDSHIP UNTIL DISCHARGE IS IMMINENT?**

As noted above, in order to establish "undue hardship" a debtor must demonstrate that: (1) given her current income and expenses, she cannot maintain a minimal standard of living if

---

[5] See also In re Strahm, 327 B.R. 319 (Bankr. S.D. Ohio 2005); In re Craine, 206 B.R. 598 (Bankr. M.D. Fla. 1997); In re Goranson, 183 B.R. 52 (Bankr. W.D.N.Y. 1995).

11

required to repay the loans; (2) her inability to repay is likely to persist for a significant portion of the repayment period; and (3) she has made good faith efforts to repay the loan. See In re Pena, 155 F.3d 1108, 1111—12 (9th Cir. 1998) (adopting Brunner test). The debtor has the burden of proving all three prongs by a preponderance of the evidence. See In re Nys, 308 B.R. 436, 441 (Bankr. 9th Cir. 2004).

ECMC argues that the Court should wait until Coleman has completed her Chapter 13 plan to determine the dischargeability issue because "it would be difficult, if not impossible, for the Court to adjudicate her undue hardship claim until she receives her discharge." Specifically, ECMC argues that, while the second prong of the Brunner test always requires some speculation regarding the debtor's future circumstances, a greater degree of speculation would be required here because the future, that is, the time period following discharge, is further off. Further, ECMC argues, a court does not normally have to speculate as to the first prong because it can use the debtor's current income at the time of plan completion. Here, however, the Court would be required to speculate as to Coleman's current income when Coleman completes the plan in 2009.

ECMC also suggests that the third prong of the Brunner test cannot be met because Coleman has demonstrated a lack of good faith by attempting to obtain an undue hardship determination while her Chapter 13 case is pending. Finally, ECMC argues that

12

a trial at this time is a waste of judicial resources because Coleman may not complete her Chapter 13 plan. ECMC contends that Coleman will not be prejudiced by waiting for a determineation until her discharge is imminent because that determination will not have any effect on her Chapter 13 plan.

At least one court has characterized the above arguments as "more prudential, rather than jurisprudential." See Strahm, 327 B.R. at 321. The Taylor court did not discuss these "prudential" arguments. However, courts that have followed Taylor have discussed and rejected them. See Ekenasi, 325 F.3d 541; Strahm, 327 B.R. 319; Goranson, 183 B.R. 52.

In Goranson, the court concluded that a debtor "may select any snapshot date during or after [the case] as the date on which to prove undue hardship." Goranson, 183 B.R. at 56. The court acknowledged that it may be a challenge to apply the Brunner test to the debtor's chosen "snapshot date," but "[t]o do otherwise would be to penalize a debtor for electing Chapter 13 over Chapter 7." Id.

The Fourth Circuit, in Ekenasi, has also permitted a debtor to choose the "snapshot date" for determining undue hardship on the grounds that the "text of the pertinent statute does not prohibit such an advance determination." Ekenasi, 325 F.3d at 547. The court, however, provided the following caution:

> [I]t will be most difficult for a debtor, to prove with the requisite certainty that the repayment of his student loan obligations

13

>                    will be an "undue burden" on him during a
>                    significant portion of the repayment period
>                    of the student loans when the debtor chooses
>                    to make that claim far in advance of the
>                    expected completion date of his plan.

Id. The Strahm court adopted the reasoning of the Ekenasi court in rejecting arguments identical to those here. See Strahm, 327 B.R. at 325.

Moreover, two published decisions from courts within the Ninth Circuit have applied the Brunner test in Chapter 13 cases where the debtors had not yet completed payments under the plan. See In re Cota, 298 B.R. 408 (Bankr. D. Ariz. 2003); In re Ritchie, 254 B.R. 913 (Bankr. D. Idaho 2000). Both courts, when determining the first prong, looked at evidence of the debtor's *current* income and expenses at the time of trial. See Cota, 298 B.R. at 414–15; Ritchie, 254 B.R. at 918. This is consistent with the language of the first prong, which requires a court, when applying the test, to consider "current income and expenses," see Pena, 155 F.3d at 1111. It is contrary to ECMC's argument that a court is required to look at a debtor's income at the date of discharge under the first prong. Further, this approach mirrors that of those courts that permit the debtor to choose the "snapshot date" for the dischargeability determination. See Ekenasi, 325 F.3d at 546–47; Goranson, 183 B.R. at 56.

With respect to the second prong, as noted above, consideration of additional circumstances indicating whether the

14

debtor's state of affairs is likely to persist for a significant portion of the repayment period "always requires the court to consider a future time period where certainty is never available, whether evidence in regard to this factor is presented in the early stages, or the later stages, of a chapter 13 case." Strahm, 327 B.R. at 322. In Cota, for example, while the court lamented that it did "not have a crystal ball to assist in determining what will happen in the future," the court nevertheless analyzed the second prong over a twenty-five year repayment period. Cota, 298 B.R. at 417–18. The court looked to evidence presented at trial regarding the debtor's current physical condition, education, and number and ages of his children in determining the debtor's future ability to maintain a minimal standard of living. See id.

In accord with ECMC's position, however, are Bender, 368 F.3d 846; Pair, 269 B.R. 719; Soler, 250 B.R. 694; and Raisor, 180 B.R. 163. The Eighth Circuit points out, for example, that "the factual question is whether there is undue hardship at the time of discharge, not whether there is undue hardship at the time that a § 523(a)(8) proceeding is commenced." Bender, 368 F.3d at 848. For this reason, it concludes, the proceeding should take place relatively close to the date of discharge so the court can examine the debtor's actual circumstances at that time. Id.

ECMC also quotes United States v. Lee, 89 B.R. 250 (N.D. Ga. 1987), aff'd, United States v. Hochman (In re Hochman), 853 F.2d 1547 (11th Cir. 1988), as stating, "No debt is dischargeable under § 1328(a) until successful completion of all payments under a Chapter 13 plan." Lee, 89 B.R. at 257. In Lee, the issue was the timeliness of the proceeding to determine dischargeability of a health education assistance loan. Id. at 251. Title 42 U.S.C. § 294f(g) imposed requirements beyond § 523(a)(8) for discharge of a health education loan, and the debtors there failed to satisfy the requirements of 42 U.S.C. § 294f(g). In dicta, however, the court acknowledged that "[i]f the debt the dischargeability of which is at issue [] is arguably one of two exceptions provided for in § 1328(a) . . . then it would be appropriate for a court to determine, before completion of the Chapter 13 plan, whether that debt is nondischargeable under § 1328(a)." Id. at 257.

The Soler court responded to the Lee court's assertion. Soler, 250 B.R. at 696. The court there pointed out that, at the time of Lee, a debt under § 523(a)(8) was not an exception to Chapter 13 discharge but was added as an exception in 1990. Id. At the time of Lee, the only exceptions to discharge under § 1328(a) were for certain long term debts and alimony and child support. See Lee, 89 B.R. at 257. The Soler court concluded that the "nature of the exception of student loan debt from discharge" distinguished it from the two types of exceptions

16

that existed at the time of <u>Lee</u>.  See <u>Soler</u>, 250 B.R. at 696. Specifically, the <u>Soler</u> court, somewhat circularly, relied on "the fact that dischargeability cannot be determined absent a discharge that has been granted or is imminent."  <u>Id.</u>  The court clarified that whether a debtor suffers from undue hardship "depends on the debtor's situation at the time of discharge." <u>Id.</u>

However, the <u>Bender</u> and <u>Soler</u> courts appear to be adding a judicial gloss to § 523(a)(8) by defining the issue as whether undue hardship exists *at the time of discharge*.  The issue defined by the statute does not include the italicized words. There is no express statutory prohibition on determining this issue before the discharge is granted.

As the <u>Goranson</u> court pointed out, to require the dischargeability determination to be postponed until the debtor's Chapter 13 plan payments are completed would make Chapter 13 less attractive to debtors with student loans than Chapter 7 where the determination could be made promptly.  This would be contrary to congressional intent to encourage debtors to choose Chapter 13 over Chapter 7.  See <u>Goranson</u>, 183 B.R. at 56.  Further, a determination at a relatively early stage of the bankruptcy case may be of significant import to a Chapter 13 debtor.  As the <u>Strahm</u> court noted, "if the Debtor prevails, in whole, or in part, a number of options may be available to the Debtor, which may impact future collective proceedings in the

17

chapter 13 case." Strahm, 327 B.R. at 325.  If the debtor does not prevail, early resolution of the issue may enable a debtor to modify its plan to propose payment to the creditors, and thereby prevent the accrual of additional interest and penalties.  See Craine, 206 B.R. at 601.

Coleman understandably would like to know before she makes plan payments for five years whether her remaining student loan debt will be discharged upon a successful completion of her plan.  Given the potential impact of the dischargeability determination at this stage in the proceedings, the Court does not believe that such a determination would be a waste of judicial resources.  Therefore, the Court concludes that it should exercise its discretion to consider the issue at this time and will deny ECMC's motion to dismiss on prudential grounds as well.

**CONCLUSION**

ECMC's motion to dismiss Coleman's complaint will be denied. Counsel for Coleman is directed to submit a proposed form of order in accordance with this decision.

END OF DOCUMENT

```
 2                      COURT SERVICE LIST

 3   Lars T. Fuller
     The Fuller Law Firm
 4   60 N. Keeble Ave.
     San Jose, CA   95126
 5
     Miriam E. Hiser
 6   Law Offices of Miriam E. Hiser
     3330 Divisadero
 7   San Francisco, CA   94123
```